IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

AUGUST 1999 SESSION

FILED

November 4, 1999

Cecil Crowson, Jr.
Appellate Court Clerk



| STATE OF TENNESSEE, | ) | C.C.A. No. 03C01-9810-CR-00379 |
|---|---|---|
| Appellee, | ) | Sullivan County |
| v. | ) | Honorable R. Jerry Beck, Judge |
| ERIC LAREZ, a/k/a "EASY," | ) | (Sale of Over One-Half Ounce of Marijuana; Sale of Over One-Half Gram of Cocaine) |
| Appellant. | ) | |

FOR THE APPELLANT:

TERRY L. JORDAN
Assistant Public Defender
P. O. Box 839
Blountville, TN 37617

GERALD L. GULLEY, JR.
P. O. Box 1708
Knoxville, TN 37901-1708
(On Appeal Only)

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General & Reporter

ERIK W. DAAB
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

H. GREELEY WELLS, JR.
District Attorney General

MARY KATHERINE HARVEY
Assistant District Attorney General
140 Blountville Bypass
P. O. Box 526
Blountville, TN 37617-0526

OPINION FILED: _____

AFFIRMED

ALAN E. GLENN, JUDGE

## O P I N I O N

The defendant, Eric Larez, appeals his convictions in the Sullivan County Criminal Court on two counts of the sale of marijuana over one-half ounce and one count of the sale of over one-half gram of cocaine. He was sentenced as a Range I offender to two years confinement for each of the counts involving marijuana and nine years in that involving cocaine, all sentences to be served concurrently. He has filed a timely appeal of these convictions, alleging as error:

1. The trial court should have instructed the jury as to a "casual exchange."

2. His rights to a speedy trial were violated by the delay of three and one-half years between his being charged with the offenses and being arrested following those charges.

3. The evidence was insufficient for a conviction as to the sale of a controlled substance.

4. He should have received a lesser or an alternative sentence.

Based upon our review, we affirm the judgment of the trial court.

## FACTS

The defendant was charged with selling a controlled substance, the sales occurring on three days in 1993. The first sale occurred on August 17, 1993, when Officer Todd Harrison, of the Kingsport Police Drug Task Force, assisted by a confidential informant, arranged for an undercover drug purchase. Officer Harrison and the informant picked up the defendant at his place of employment. The defendant directed them to an apartment building located at 201 East Ravine Street in Kingsport. While parked in front of the apartment, Harrison gave $50 to the informant who then gave it to the defendant. The defendant got out of the car and went into the apartment. When the defendant returned to the vehicle approximately four minutes later, he told Harrison "they were out of LSD," but "we could get some pot." Harrison said he would want an ounce, if he were to purchase marijuana. The defendant then responded, "No problem."

Harrison told the defendant he needed to go to a bank to get more cash. In fact, Harrison wanted to record the serial numbers of the currency with which he was to pay the defendant, in addition to the $50 already paid. The three then drove to a bank, where Harrison went inside and recorded the serial numbers. They then returned to the apartment, where Harrison gave the defendant an additional $100 in cash. The defendant got out of the car and entered the apartment building. He soon returned to the car with a plastic baggie of marijuana, which he gave to Harrison. Harrison then drove the defendant

to 717 Virgil Avenue in Kingsport, where the defendant said he lived.

On August 18, 1993, Harrison planned another drug purchase with the defendant. He and the informant picked up the defendant at the same Virgil Avenue address where he had been left the previous afternoon. Harrison's understanding, based upon what the informant had said, was that Harrison would purchase one-quarter pound of marijuana from the defendant for $500. Harrison was to give $300 to the defendant, with the remaining $200 to be paid upon delivery of the marijuana. Harrison, the informant, and the defendant went in Harrison's vehicle to the same apartment building at 201 East Ravine Street. After Harrison gave him $300, the defendant entered the apartment. The defendant returned to the car and told Harrison he could not obtain the marijuana at that time because the supplier was unavailable. The defendant also told Harrison that he and another individual, who had come out of the apartment building with the defendant, were going down the street to where a "bigger stash" was kept "to see if they could get it there." The defendant told Harrison to wait at the apartment, and he would return shortly. Soon, the defendant returned and told Harrison he would have to wait for another hour. The defendant returned Harrison's $300.

As Harrison was counting the returned money, the defendant's companion told the defendant that he could obtain the marijuana immediately. Harrison then gave the $300 back to the defendant. The defendant told Harrison to drive around the block for about five or ten minutes and then return. Harrison did as instructed, and, upon his return to the apartment, the defendant got into the car and gave him $300 worth of marijuana. The defendant told Harrison to drive around for another hour and then return for the rest of the marijuana. Harrison followed these instructions and, upon his return, paid the defendant $200 for the additional marijuana.

On August 23, 1993, Harrison and the informant again picked up the defendant at the defendant's place of employment and returned to the same apartment building. Before getting into Harrison's car, the defendant said he knew the informant had once been a "narc" and asked for reassurance the two of them were not "narcs." Upon Harrison's saying they were not, the defendant came with them. During the trip, Harrison told the defendant that he wanted to buy an "eight- ball," to which the defendant replied they would have to "see just what they've got when we get there." As they reached the apartment, the defendant left the car and entered the apartment. Soon he returned and told Harrison that

the supplier was not available, but he had been "beeped" and would be available in twenty to thirty minutes. The three then rode around the neighborhood for a period. Upon their return, Harrison gave the defendant $100 as a down payment for the cocaine. The defendant again entered the apartment and returned shortly, telling Harrison an "eight-ball" is $300. After Harrison gave the defendant the additional $200, Harrison and the informant drove around for a short time. As they returned to the street in front of the apartment building, the defendant and another male pulled up in an automobile. The defendant ran over to Harrison's car and handed him what the informant described as a "big fat juicy eight-ball," saying additionally it was "good stuff." Harrison then dropped off the defendant at the Virgil Street address. Upon cross-examination, Harrison testified the defendant had told the informant that he "could get him whatever he wanted."

At the trial, Tennessee Bureau of Investigation forensic scientist David Holloway testified the substance sold to Harrison on August 17 was 20.9 grams of marijuana, and the substance sold on August 18 was 47.6 grams of marijuana. Tennessee Bureau of Investigation chemist Celeste White testified the substance sold to Harrison on August 24 was .6 grams of cocaine.

4

## I. FAILURE TO INSTRUCT AS TO "CASUAL EXCHANGE"

The defendant's first assignment of error is that the trial court should have instructed the jury as to a "casual exchange" as to each of the three offenses. Regarding this instruction, Tennessee Code Annotated § 39-17-418 (1997) provides:

> **Simple possession or casual exchange.**
>
> (a)  It is an offense for a person to knowingly possess or casually exchange a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice.

Without question, a defendant is entitled to a jury instruction as to lesser included offenses:

> Since the 19th century, our legislature has required trial judges "in cases of criminal prosecution for any felony wherein two (2) or more grades or classes of offense may be included in the indictment, to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to  do so."

State v. Trusty, 919 S.W.2d 305, 310 (Tenn. 1996) (citing Tenn. Code Ann. § 40-18-110).

However, simply because there are lesser included offenses to the offense with which a defendant has been charged does not automatically mean the defendant is entitled to a jury instruction on those offenses:

> Accordingly, before instructing a jury on a lesser offense, the trial court must determine whether the evidence, when viewed in the light most favorable to the *defendant's theory* of the case, would justify a jury verdict in accord with the defendant's theory, and would permit a rational trier of fact to find the defendant guilty of the lesser offense and not guilty of the greater offense.

State v. Elder, 982 S.W.2d 871, 877 (Tenn. Crim. App. 1998) (citations omitted) (emphasis in original).

The word "casual" has been defined as:  "Occurring without regularity, occasional; impermanent, as employment for irregular periods. Happening or coming to pass without design and without being foreseen or expected; unforeseen; uncertain; unpremeditated." Black's Law Dictionary 197 (5th ed. 1979).

A "casual exchange" can occur "when the transfer of the controlled substance is made without design," and "even though money is involved in the transaction." State v. Carey, 914 S.W.2d 93, 96 (Tenn. Crim. App. 1995).   An example of a casual exchange is detailed in State v. Helton, 507 S.W.2d 117 (Tenn. 1974) wherein the defendant, Helton,

testified that, rather than selling heroin to the informant (whose whereabouts were unknown at the time of the trial), he was actually returning the "merchandise" to the informant, Eddie Allison, because he did not want to use it. Thus, according to the defendant, his sale of heroin was a "casual exchange." As to this theory, the court stated:

> There is evidence in the record that Allison was both an addict and a drug peddler. There is evidence that Helton was a user and that he was neither an addict nor a drug peddler. There is evidence that he carried away from Allison's trailer two small packages for his own use and that, after becoming ill from the "hit" administered by Allison, his sole purpose was to obtain a refund of the exact purchase price from the original seller. In our opinion, said evidence constitutes circumstances indicating a casual exchange, and it thus became mandatory for the trial judge to charge the exact language of the second sentence of T.C.A. § 52-1432(a)(2). . . .

Helton, 507 S.W.2d at 121.

In declining to instruct the jury on a casual exchange of drugs, as requested by defense counsel in the case *sub judice*, the trial court stated:

> Well, this officer had conversations with Larez and they had a definite plan to go to the Ravine Street address, a definite plan between the officer that testified and Larez. The officer gave him money. The officer knew why he was going in. I think it's pretty clear -- I would state for the record it's pretty clear that Mr. Larez, evidently he was getting it from somebody else and not the -- himself. Then, he brought it out. And the price agreed upon was the price, evidently, that Larez said the people inside the Ravine Street address wanted. All right. All right. Anything else, Mr. Jordan?

We agree with the decision of the trial court not to charge the jury as to a "casual exchange," for such a charge would not have been justified under the facts. Officer Harrison had not previously known the defendant, but had been put in contact with him by the confidential informant. On each of the three occasions Harrison purchased controlled substances, Harrison picked up the defendant and drove him to the location where the drugs were obtained, apparently from a third person. Although the facts become somewhat more complicated as to the third transaction, the meetings were preplanned, the parties coming together for the sole purpose of Harrison's purchasing drugs from the defendant. There was no relationship between the two or any other reason for them to be together, other than for Harrison to purchase drugs. A casual exchange cannot result merely from the fact a drug sale does not proceed efficiently or as promptly as possible. Thus, this assignment of error is without merit.

## II. DENIAL OF THE DEFENDANT'S RIGHT TO A SPEEDY TRIAL

In this matter, there was a delay of three years and eight months between the time

6

of the offenses and the defendant's being served with the presentments.  He argues that this delay violates his right to a speedy trial.  The trial court held a hearing on this matter and denied the defendant's claim that his speedy trial rights had been violated by the delay.

In State v. Bishop, 493 S.W.2d 81 (Tenn. 1973), our supreme court, adopting the balancing test of Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972), stated as follows:

> In Barker v. Wingo, supra, the court accepted a "balancing test" in which the conduct of both the prosecution and defendant are weighed, which test of necessity compels the court to approach speedy trial cases on an ad hoc basis. In the Barker case the court discussed four specific factors: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted a claim to his right, and (4) whether defendant was prejudiced by the delay.

Bishop, 493 S.W.2d at 83-84.

To establish the chronology in the case *sub judice*, the trial court held a hearing on the defendant's motion to dismiss the charges because of the alleged violation of his right to a speedy trial.  An exhibit to the proof adduced at the hearing was a "timeline" which set out in chronological order the events relevant to the defendant's motion. We will paraphrase those events.

The offenses with which the defendant was charged occurred on August 17, 18, and 24, 1993. Because Officer Harrison was acting undercover at the time, presentments were not filed on the charges until April 11, 1994, the first capias being issued in Sullivan County the following day.  In the interim, the defendant was arrested on September 30, 1993, in Greenville, North Carolina, and charged with attempted breaking and entering, for which he was incarcerated on October 27, 1993.  He was paroled by the State of North Carolina on November 29, 1993.  A capias had been issued again by Sullivan County on both September 13 and 14, 1994.

On October 28, 1994, the defendant was arrested in Ector County, Texas, and charged with possession of marijuana,  to which he entered a guilty plea and received, as punishment, three days confinement on November 22, 1994.  He was again arrested in Ector County, Texas, on December 17, 1994, and charged with the possession of marijuana. He pleaded guilty to the offense on January 6, 1995, and was sentenced to forty days in jail.   On August 20, 1995, the defendant was arrested a third time in Ector

7

County, Texas, and charged with theft between $20 and $500.

Another capias was issued in Sullivan County on September 25, 1995; and, on October 4, 1995, a return was made on the capias issued on September 13, 1994, that the defendant was not to be found in the county. The defendant was arrested again in Ector County, Texas, on November 21, 1995, and charged with carrying a prohibited weapon. He pleaded guilty the following day to theft between $20 and $500, and pleaded guilty to the prohibited weapon charge on January 3, 1996. On August 15, 1996, he was arrested again in Ector County, Texas, and was apparently charged with the delivery of marijuana between one-quarter ounce and five pounds. On September 9, 1996, in Sullivan County, another capias was issued for the defendant and, on September 20, 1996, a not to be found return was made on the capias issued on September 20, 1995.

On May 6, 1997, the defendant's name was put into the National Crime Information Center by Sullivan County authorities. Another capias was issued for the defendant by Sullivan County on September 4, 1997; and a not to be found return was made on the capias which had been issued on September 9, 1996.

The defendant was detained on November 27, 1997, in Presidio County, Texas, "while attempting to cross into Mexico." The Sullivan County Sheriff's Department was contacted as to its NCIC entry regarding the defendant, and he was held for extradition to Sullivan County. On December 14, 1997, he was transferred to the Sullivan County Jail.

Thus, the crux of the defendant's speedy trial argument is that his name was not put into NCIC until approximately three years and one month after he had been charged with the offenses in Sullivan County; and he did not learn of the charges until about seven months later. Given these circumstances, we will now determine whether there was a violation of the defendant's right to a speedy trial.

### A. Length of the Delay

In Doggett v. United States, 505 U.S. 647, 652, 112 S.Ct. 2686, 2691, 120 L.Ed.2d 520 (1992), the Court stated, "[T]he presumption that pretrial delay has prejudiced the accused intensifies over time." Our supreme court concluded a delay of thirteen years, as occurred in State v. Wood, 924 S.W.2d 342, 346 (Tenn. 1996), was a factor weighing "favorably for the defendant" and clearly required an analysis of the remaining factors. We

8

make a like holding in this case:  the delay weighs in favor of the defendant and requires additional analysis.

## B.  Reason for the Delay

In this case, it appears a capias was issued on at least six occasions, and Officer Harrison and another officer had tried to locate the defendant at his last known place of residence as well as at his place of employment.  It is not apparent from the record whether the defendant would have been located at the time of one of his several subsequent arrests in Ector County, Texas, had his name earlier been placed into NCIC. Additionally, there is nothing in the record to indicate the failure to earlier put the defendant's name into NCIC resulted from other than bureaucratic oversight.  While this failure is weighed against the prosecution, the weight is not as great as would be the case if the delay were intentional to either harass the defendant or to gain an advantage.  See State v. Wood, 924 S.W.2d 342, 347 (Tenn. 1996).  However, this factor does weigh against the prosecution.

## C.  Whether the Defendant Asserted His Right to a Speedy Trial

Obviously, the defendant did not assert his right to a speedy trial during the period of the delay because he was unaware of the pendency of the charges in Sullivan County. Under these circumstances, this factor does not weigh against either party.

## D.  Prejudice to the Defendant

Our supreme court has instructed that we must "view the fourth factor as the most important:  whether the accused has suffered prejudice by the delay." Wood, 924 S.W.2d at 348.  First, we note that the defendant has neither claimed nor identified specific prejudice resulting from the delay, basing his claim instead upon the length of the delay. In fact, since the defendant was unaware of the pendency of the charges, he could not have suffered anxiety because of them.  Thus, our determination with regard to this factor will center upon whether he suffered any other kind of prejudice as the result of the delay.

We note two witnesses testified on behalf of the defendant during this trial, Sharon Burrell and her son, Terry Burrell, with whom the defendant resided at the Ravine Street address in Kingsport during a portion of the summer of 1993.  Both testified that they did not know the defendant to have drugs in his possession while living with them. The defendant did not testify during either the trial or the hearing on his motion to dismiss the

9

indictments based upon his speedy trial claim.

Our supreme court noted in Wood that the fourth factor, prejudice to the defendant, is entitled to the "greatest weight" of all of the factors. However, the court recognized the difficulty a defendant may have in proving prejudice:

> It is often extremely difficult, however, for a defendant to demonstrate specifically how the delay has impaired his ability to defend himself. Courts have recognized this difficulty and consequently do not necessarily require a defendant to affirmatively prove particularized prejudice. Doggett, [505 U.S. at 654-55], 112 S.Ct. at 2692; Moore v. Arizona, 419 U.S. 871, 42 L.Ed.2d 110, 95 S.Ct. 131 (1974).

Wood, 924 S.W.2d at 348.

Certainly, we recognize the difficulties encountered in this regard by a person faced with criminal charges. However, under the particular circumstances of this case, we agree with the holding of the court in State v. Thomas, 818 S.W.2d 350, 363 (Tenn. Crim. App. 1991):

> Finally, the evidence in this record does not indicate that the defendant was impaired in her ability to prepare a defense. In fact, it would have handicapped Lentz if she had been forced to prepare simultaneously for the charges pending here and those in Georgia. This record does not demonstrate, by virtue of the delay, any resultant prejudice in her preparation for trial. We therefore find no deprivation of Lentz's right to a speedy trial.

In this matter, there is no allegation or proof that the defendant was hampered in defending himself because of the passage of time before he was arrested pursuant to the charges. Further, we note this defendant, like that in Thomas, was charged with other offenses between the dates of the offenses herein and his receiving notice of their pendency. In fact, within approximately eighteen months of the illegal activities in Kingsport, the defendant had been arrested and convicted three times for violations in North Carolina and Texas. Had this defendant received more timely notice of these charges, he could have simultaneously been defending himself in one or two other states.

Thus, in our analysis, we find factor four weighs slightly in favor of the prosecution; and, as a result, the defendant's speedy trial claim must fail.

### III. SUFFICIENCY OF THE EVIDENCE

The defendant has next alleged there is insufficient evidence in the record to show he "sold the controlled substances to Harrison." As the basis for this claim, he states in his

brief:

> There was no evidence presented that indicated that the Defendant made a profit on any of these exchanges. Although money was involved, the circumstances around the transactions, when taken in their totality, indicate that there was only a casual exchange, and not a sale of controlled substances in violation of Tennessee Code Annotated § 40-17-417.

In each of the three counts of the indictment, the grand jury charged the defendant "did unlawfully, feloniously, and knowingly sell to Todd Harrison, a controlled substance" in violation of Tenn. Code Ann. § 39-17-417 (1997), which states as follows:

**Criminal offenses and penalties.**

(a) It is an offense for a defendant to knowingly:

    (1) Manufacture a controlled substance;

    (2) Deliver a controlled substance;

    (3) Sell a controlled substance; or

    (4) Possess a controlled substance with intent to manufacture, deliver or sell such controlled substance.

Tenn. Code Ann. § 39-17-417 (1997).

Our standard of review, as to the sufficiency of the evidence, is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). Conflicts in testimony are resolved in favor of the State, which is, on appeal, "entitled to the strongest legitimate view of the trial evidence and all reasonable or legitimate inferences which may be drawn therefrom." State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978); see also State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984) (questions as to credibility of witnesses are for jury); State v. Johnson, 980 S.W.2d 414, 419 (Tenn. Crim. App. 1998); State v. Zonge, 973 S.W.2d 250, 254-55 (Tenn. Crim. App. 1997).

Applying these authorities, we disagree with the defendant's assertion that the evidence was sufficient to show only a "casual exchange" and have previously considered that contention in this opinion. Although none of the transactions testified to by Officer Harrison occurred as a simultaneous transaction, with Harrison handing the money to the defendant and immediately receiving the drugs in return, the facts remain, as Harrison

specifically testified, that in each instance he asked to purchase drugs from the defendant and in exchange for each payment did receive controlled substances. Although the defendant did not always provide the type of drugs requested by Officer Harrison, it is undisputed the meetings were prearranged for Harrison to purchase drugs from the defendant, and that is exactly what occurred in each case. Thus, the evidence was sufficient for a rational trier of fact to conclude that the three sales of controlled substances by the defendant were violations of Tenn. Code Ann. § 39-17-417 (1997).

For these reasons, this assignment is without merit.

## IV. PROPRIETY OF THE SENTENCES

As to the defendant's conviction for the sale of cocaine, the trial court sentenced him to confinement for nine years, as a Range I standard offender, which was one year more than the minimum sentence for this offense. He was sentenced to two-year sentences in each of the counts charging the illegal sale of marijuana and was fined in all three of the convictions. The trial court ordered all sentences to be served concurrently.

When a defendant challenges the length, range, or manner of service of a sentence, as has the defendant here, this court conducts a *de novo* review with the presumption the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d) (1997); see also State v. Anderson, 880 S.W.2d 720, 727 (Tenn. Crim. App. 1994). That presumption is conditioned on an affirmative showing in the record that the trial court did in fact consider sentencing principles and all relevant facts and circumstances. See State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991) (finding "presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances"). The burden is on the defendant to show the sentence is inappropriate. See Tenn. Code Ann. § 40-35-401 (1997), Sentencing Comm'n Cmt. When our review supports a conclusion that the trial court imposed a lawful sentence, "then we may not disturb the sentence even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785 (Tenn. Crim. App. 1991).

So long as the trial court follows the principles of the Criminal Sentencing Reform Act of 1989, the weight to be attached to each enhancing and mitigating factor is left to the discretion of the court. See State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986); State v.

Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The comments to Tenn. Code Ann. § 40-35-210 (1997) state:

> The sentencing commission specifically did not designate any particular numeric value for the enhancement and mitigating factors. Other jurisdictions have given these factors numeric values but this removes the judicial discretion necessary to make individualized sentencing determinations. The provisions of this section which require that the judge begin a sentencing determination at the statutory minimum will promote a uniform sentencing procedure.

Tenn. Code Ann. § 40-35-210 (1997) Sentencing Comm'n Cmt.


## A. Lengths of the Sentences

In its setting of the defendant's sentence for the sale of cocaine, the trial court considered the enhancing and mitigating factors, as set out in Tenn. Code Ann. §§ 40-35-113 & 114 (1997). The court applied enhancing factor number (1), the defendant had "a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." The court also found two mitigating factors would apply: (1) the "defendant's criminal conduct neither caused nor threatened serious bodily injury," and (13), "any other factor consistent with the purposes" of the Criminal Sentencing Reform Act of 1989. In this case, as "other factor[s]," the court acknowledged that the defendant had been diagnosed with a bipolar disorder; he had family support; and he had waived extradition to return to Sullivan County. Finding the aggravating factors outweighed the mitigating factors, the court sentenced the defendant to nine years, which was one year more than the minimum punishment for the cocaine offense for which the defendant was convicted, and to two years each for the marijuana offenses.

The defendant argues the trial court should have also applied mitigating factor (4), "[t]he defendant played a minor role in commission of the offense." Tenn. Code Ann. § 40-35-113(4) (1997). The defendant argues this factor is applicable because he had no automobile, the exchanges were "facilitated by Officer Harrison" picking him up, and he only acquired the drugs as requested but did not "push drugs" onto the officer. Further, the defendant contends his role was minor because he "exhibited no control over the controlled substances, and was not able to accurately predict what would be available or what the price would be." However, given the nature and extent of the defendant's activities in the sale of the drugs, we do not agree his role was "minor." There is no evidence the defendant was talked into selling the drugs by Officer Harrison. In fact, they met on each occasion for the express purpose of Harrison's purchasing drugs from the defendant. Even though, apparently, the defendant obtained the drugs from others, he was paid by

13

Officer Harrison for each sale. Thus, the trial court properly found his role was not "minor."

In sentencing the defendant, the trial court stated:

> The Court's of the opinion the enhancing factors outweigh the mitigating factors. The Court's of the opinion the sentence in this case should be nine years on the Class B felony. The defendant will receive -- of course receive credit for all time served.
>
> As to consecutive sentencing factors, although the defendant has a record, the Court must consider justice, the defendant was eighteen (18) years of age. Although the Court's of the opinion that prior record has a very significance -- great significance in length of sentence in regards to potential danger, future dangers to the community, the courts believe that should be given lesser weight on consecutive sentencing factors, and I'm going to direct the sentence will be run concurrently.

We believe the trial court properly identified and applied the enhancing and mitigating factors. Since the court's findings are adequately supported by the record, we may not modify the sentence. See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991); State v. Housewright, 982 S.W.2d 354, 356 (Tenn. Crim. App. 1997). Accordingly, this assignment of error is without merit.

### B. Denial of Probation or Alternative Sentencing

The defendant argues that the trial court should have considered other than incarceration as to the three sentences.

First, we note the nine-year sentence imposed for the sale of cocaine, a Class B felony, could not be suspended:

> A defendant shall be eligible for probation under the provisions of this chapter if the sentence actually imposed upon such defendant is eight (8) years or less; provided, that a defendant shall not be eligible for probation under the provisions of this chapter if the defendant is convicted of a violation of § 39-17-417(b) or (I), § 39-13-304, § 39-13-402, § 39-15-402 or § 39-13-504. A defendant shall also be eligible for probation pursuant § 40-36-106(e)(3).

Tenn. Code Ann. § 40-35-303(a) (1997).

Thus, the sentence could not be suspended. In addition, because the defendant was convicted of the sale of a Schedule I controlled substance in violation of Tenn. Code Ann. § 39-17-417 (a) & (b) (1997), he was not eligible to have this sentence suspended. Since we have made this determination as to the cocaine sentence, the question is now moot as to whether the sentences for sale of marijuana should have been suspended.

14

The defendant was also eligible to be considered for the Community Corrections Program, pursuant to Tenn. Code Ann. § 40-36-101 to -306 (1997), the Tennessee Community Corrections Act of 1985. At the sentencing hearing, it does not appear that the possibility of alternative sentencing was discussed or findings were made as to whether the defendant should be placed into the Community Corrections Program. Accordingly, we will now determine whether the defendant should have been placed into this program. See State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

Initially, we note that according to the Criminal Sentencing Reform Act of 1989, at Tenn. Code Ann. § 40-35-102(6) (1997), the defendant is not presumed to be a candidate for alternative sentencing, because he was convicted of a Class B felony. Further, since the defendant is not benefitted by the presumption he is suitable for alternative sentencing, he has the burden of establishing such a sentence would "'subserve the ends of justice and the best interests of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990). In determining whether the defendant should have been given an alternative sentence, we consider the following principles:

> (1) Sentences involving confinement should be based upon the following considerations:
>
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or,
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103 (1997); see also State v. Ashby, 823 S.W.2d 166, 167 (Tenn. 1991); State v. Bingham, 910 S.W.2d 448, 453-54 (Tenn. Crim. App. 1995).

According to the presentence report filed with the trial court, in addition to the three convictions which are the basis for this appeal, the defendant has five other convictions:

> 1. On October 18, 1993, convicted of attempted breaking and entering in Pitt County District Court for Greenville, North Carolina and received a sentence of two years, Cause No. 1993CR021127;
>
> 2. On November 22, 1994, convicted in Cause No. 94-3366, of possession of marijuana in an amount of two ounces or less in the County Court at Law of

Ector County, Texas;

3. On January 6, 1995, convicted in Cause No. 95-67 of possession of marijuana in an amount of two ounces or less in the County Court at Law of Ector County, Texas;

4. On November 22, 1995, convicted in Cause No. 94-3471 of theft ($20 or more but less than $500) in the County Court at Law of Ector County, Texas;

5. On January 3, 1996, convicted in Cause No. A25097 of carrying a prohibited weapon and received a sentence of two years in the 70th Judicial District Court, Ector County, Texas.

According to the presentence report, the defendant has lived in Texas for the majority of his life, but has also lived in North Carolina, Tennessee, and Minnesota. He has an "unstable" employment history and has been on probation at least twice. In October 1993, apparently after being put on probation in North Carolina following a guilty plea to the offense of attempted breaking and entering, the defendant's probation was revoked and he was incarcerated. Additionally, as of October 7, 1998, the date of the presentence report, he was on probation for two years from Ector County, Texas, for the offense of carrying a prohibited weapon. It appears he has been incarcerated on at least four occasions, for periods of between three and forty days, following pleas of guilty. The record reflects the defendant was charged on August 15, 1996, in Ector County, Texas, with the delivery of marijuana, apparently in an amount between one-quarter ounce and five pounds.

Thus, during the years following his sales of controlled substances in Sullivan County to Officer Harrison, the defendant has been arrested at least six times and convicted at least five times. It appears he has been incarcerated on four occasions following convictions, has been on both parole and probation at least once, and has had one felony conviction. Further, he was on probation at the time of his convictions in Sullivan County. Thus, the defendant would have been disqualified from alternative sentencing because confinement was necessary as the result of "his long history of criminal conduct" and because "measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant."

This assignment is without merit.

**CONCLUSION**

16

Based upon the authorities and the reasoning set out herein, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE

CONCUR:

_____
JOSEPH M. TIPTON, JUDGE

_____
JOHN EVERETT WILLIAMS, JUDGE

17